# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JEFFREY E. EBERLE,                              Case No. 1:11-cv-867
      Petitioner,


                                                     Barrett, J.
      vs.                                      Wehrman, M.J.


WARDEN, MANSFIELD                               **REPORT AND**
CORRECTIONAL INSTITUTION,                       **RECOMMENDATION**
      Respondent.


Petitioner, an inmate in state custody at the Mansfield Correctional Institution in Mansfield, Ohio, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel. (Doc. 1). This matter is before the Court on respondent's motion to dismiss filed February 13, 2012, petitioner's response in opposition to the motion, and respondent's reply to petitioner's response. (Docs. 5, 9, 11).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On January 11, 2006, the Clermont County, Ohio, grand jury returned an indictment charging petitioner with three counts of aggravated murder in violation of Ohio Rev. Code § 2903.01 with specifications of aggravating circumstances and potential death penalty; one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(3); and one count of aggravated arson in violation of Ohio Rev. Code § 2909.02(A)(1). (*See* Doc. 5, Exs. 1, 3).

It appears from the record that petitioner retained the services of three attorneys during the course of the trial proceedings. (*See id.*, Ex. 12, p. 2). On September 18, 2006, which was

the scheduled trial date, petitioner waived his right to a jury trial, and a three-judge panel was convened to preside over the matter. (*See id.*, Ex. 4). Petitioner then entered a guilty plea to one of the aggravated murder counts (Count One), but not to the aggravating circumstances and potential death penalty specifications attached to that count. (*See id.*, Exs. 5, 29). In exchange for his plea, the State agreed to dismiss the four other charges and all specifications with the potential of a death sentence; the parties also jointly recommended the imposition of an agreed-to sentence of life imprisonment with eligibility for parole after serving twenty years of the sentence. (*See id.*, Ex. 5 & Ex. 29, Tr. 5-6).

At the plea hearing held before the three-judge panel, the following "stipulation or . . . agreed statement of facts" was entered on the record:

> [T]he parties stipulate that the Defendant, Jeff Eberle, is admitting that on December 15, 2005, in Clermont County, Ohio, he did purposely and with prior calculation, design, cause the death of Michael Fish. The evidence of trial would have shown that beginning on December 14, 2005, and continuing into December 15, 2005, the Defendant placed shovels and rakes into his vehicle. The Defendant then drove Jason Evick and Michael Fish to a . . . secluded location in Clermont County, Ohio, luring Michael Fish there under false pretenses. The evidence would have further shown the Defendant then assaulted Michael Fish who died of blunt force trauma caused by the shovel Defendant had brought to the scene.

(*Id.*, Ex. 29, Tr. 24-25).

After informing petitioner of the nature of the charges and the consequences of his plea and extensively questioning petitioner regarding his understanding of the plea agreement, the three judges unanimously concluded that the plea had been entered knowingly, voluntarily and intelligently. (*See id.*, Tr. 6-27). The court accepted petitioner's guilty plea and then proceeded to sentence petitioner in accordance with the parties' plea bargain to a life term of imprisonment with eligibility for parole after serving twenty years of the sentence. (*See id.*, Tr. 27, 39). The

sentencing entry was docketed on September 19, 2006. (*Id.*, Ex. 6).

Petitioner did not pursue an appeal from his conviction or sentence in the state courts.

**Motion To Withdraw Guilty Plea**

On July 20, 2009, nearly three years later, petitioner filed a motion to withdraw his guilty plea with the trial court. (*Id.*, Ex. 9). In the motion, which was filed with the assistance of new counsel, petitioner alleged that he suffered a "manifest injustice" due to the ineffectiveness of trial counsel based on counsel's failure (1) "to accurately communicate" an allegedly damaging statement made by a witness, Ryan Goodman, in order to induce petitioner to plead guilty; and (2) to investigate the "potential testimony of Amanda Fugate," who allegedly told law enforcement officers that her boyfriend, Jason Evick, had admitted to killing the victim. (*Id.*). In addition, petitioner claimed that he suffered a "manifest injustice" because the prosecutor failed to disclose Jason Evick's admission to the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (*Id.*). Petitioner attached as supporting evidence to the motion his own affidavit, as well as the affidavits of Ryan Goodman and Orrin Nordstrom, an attorney/private investigator who apparently was hired by petitioner to investigate the case some time *after* he was convicted and sentenced upon entry of his guilty plea. (*See id.,* "Exhibits 1-3;" *see also id.,* Ex. 12, p. 4).

Ryan Goodman averred that he was a room-mate of petitioner and Evick at the time of Fish's murder; that he "gained [his] knowledge of what happened to Michael Fish almost solely through [his] conversations with Jason Evick;" and that the "only statement ever made by Jeff Eberle to [him] regarding Michael Fish was 'Motherfucker tried to play us so we got him.'" (*Id.*, Ex. 9, "Exhibit 1"). Nordstrom averred that he "investigated potential witnesses and leads regarding the death of Michael Fish" from May 2007 to December 2008, and that during the

course of his investigation, he easily "discovered information that would likely have influenced Jeff Eberle's decision to plead guilty." (*Id.*, "Exhibit 3"). Nordstrom specifically cited the following evidence that he had discovered during the investigation: (1) Amanda Fugate stated in an interview that she had relayed to "the cops" that Evick had "told her that 'he killed Michael Fish and that he was pushing up daisies;'" and (2) "a potential unindicted coconspirator, Jeff Weldon, had an antagonistic relationship with the deceased due to both the deceased['s] and Mr. Weldon[']s involvement in illegal drug trafficking." (*See id.*).

Finally, petitioner averred in pertinent part that prior to the scheduled trial date, his attorney said that he had "reviewed that statement of Ryan Goodman and that [Goodman's] statement would result in [petitioner's] conviction." (*Id.*, "Exhibit 2"). Petitioner stated that although he requested to see Goodman's statement, counsel never provided it to him. (*Id.*). Petitioner further averred that although he requested to review any statements made by Jason Evick or Jeff Weldon, his attorneys "never provided that opportunity to [him];" that he "was never made aware by the State or through [his] attorneys that Jason Evick had confessed to Amanda Fugate that he had killed Michael Fish;" and that if he "had been aware of the content of Ryan Goodman's statement or the admission by Jason Evick, [he] would not have pled guilty but would have exercised [his] right to a jury trial. " (*Id.*).

On September 23, 2009, the trial court issued a Decision and Entry overruling petitioner's motion to withdraw his guilty plea. (*Id.*, Ex. 12). In denying the motion, the court reasoned in pertinent part:

> Eberle sets forth two bases in support of his motion to withdraw his plea of guilty: (1) ineffective assistance of counsel; and (2) prosecutorial misconduct. Each basis will be considered in turn. Ineffective assistance of counsel is a proper basis for seeking post-sentence withdrawal of a guilty plea. "When the alleged error

underlying a motion to withdraw a guilty plea is ineffective assistance of counsel, the movant must show that (1) his counsel's performance was deficient; and (2) there is a reasonable probability that, but for counsel's errors, he would not have pled guilty."

Eberle first argues that his trial counsel . . . was ineffective because he told Eberle that a statement made by a witness, Ryan Goodman, would deliver a guilty verdict for the State. . . .

At most, Eberle's counsel overestimated the impact Goodman's statement would have at trial. Such an overestimation is a judgment made by the attorney in the course of representing his client. There is no evidence in the record that Eberle's trial counsel intentionally misled him or that he intentionally overestimated the impact of Goodman's statement to elicit a guilty plea from Eberle. The attorney's assessment of the impact that Goodman's statement would have on a jury does not rise to the level of deficient conduct. It was his opinion. Furthermore, Eberle did not mention that he was not allowed to read or hear Goodman's statement during the extensive colloquy that he had with the court at his plea hearing. A three-judge panel accepted Eberle's plea and gave him a full opportunity to ask questions. Eberle does not allege that the trial court failed to comply with Crim.R. 11 when he entered his plea. Based upon the evidence before the court, Eberle's counsel's characterization of Goodman's testimony does not rise to the level of manifest injustice. Accordingly, this evidence does not support a finding of manifest injustice that would permit Eberle to withdraw his plea post-sentencing.

Eberle next asserts that his counsel was ineffective for failing to investigate the potentially advantageous testimony of Amanda Fugate. . . .

"Effective representation carries with it a duty to investigate." The record does not indicate, nor does Eberle assert, that Eberle's trial counsel failed to conduct any pretrial investigation or failed to interview him in preparing the case. "The reasonableness of counsel's determination regarding the extent, method, and scope of any pretrial discovery necessarily depends upon the particular facts and circumstances of each case." There is no evidence in the record that Eberle's counsel knew that Amanda Fugate could provide potentially exculpatory testimony. Eberle contends that the State knew of Fugate's testimony, but that his counsel did not. The failure of Eberle's trial counsel to discover Fugate's potential testimony is not a fundamental flaw in the proceedings that results in a miscarriage of justice. Consequently, there is no evidence that Eberle's plea was not entered knowingly, voluntarily, and intelligently. His attorneys' failure to discover Fugate's potentially advantageous testimony does not rise to the level of deficient conduct. Accordingly, this evidence does not support a finding of manifest injustice that would permit Eberle to withdraw his plea post-sentencing.

Eberle's second basis for withdrawal of his guilty plea is prosecutorial misconduct. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Whether evidence is deemed material depends upon whether the result of the proceeding would have been different if the evidence [had] been disclosed to the defense. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. The standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense."

Eberle asserts that the State failed to provide to Eberle evidence of Jason Evick's admission. Eberle asserts that Amanda Fugate was questioned by law enforcement agencies and told them that her boyfriend had admitted to committing the murder. To support this argument, Eberle attached the Orrin Nordstrom Affidavit to his motion to withdraw. . . .

Eberle has not submitted an affidavit by Amanda Fugate attesting to this testimony. Additionally, Nordstrom does not state that he interviewed Amanda Fugate and that she made this statement to him. Instead, Nordstrom merely states that he discovered that Amanda Fugate stated in an interview that Evick told her that he killed Mike Fish and that she had told the cops the same thing. Fugate's testimony is hearsay at best and likely double hearsay. Taking this attestation as true only evidences that Nordstrom learned that Amanda Fugate made this statement in an interview. Accepting this fact as true does not create a reasonable likelihood that a withdrawal of Eberle's plea is necessary to correct a manifest injustice. Accordingly, Eberle is not entitled to an evidentiary hearing on his motion to withdraw his plea of guilty.

(*Id.*, Decision, pp. 3-7) (footnotes to case citations omitted).

Petitioner's counsel filed a timely appeal on petitioner's behalf to the Ohio Court of Appeals, Twelfth Appellate District. (*Id.*, Ex. 13). In the appellate brief submitted by counsel, petitioner claimed as the sole assignment of error that the trial court erred in denying his motion for withdrawal of his guilty plea without an evidentiary hearing "since he would not have entered this plea but for the ineffectiveness of counsel and the misconduct of the government." (*Id.*, Ex. 14). During oral arguments, the state appellate court *sua sponte* raised an additional issue as to "whether appellant's guilty plea was rendered invalid pursuant to the Ohio Supreme

Court's decision in *State v. Clark*, [893 N.E.2d 462 (Ohio 2008)], when the trial court erroneously informed him that he would be subject to a mandatory five-year term of postrelease control if he was ever released from prison."  (*See id.*, Ex. 21, p. 2).  The parties submitted supplemental briefs addressing that issue.  (*See id.*).

On August 2, 2010, the Ohio Court of Appeals issued an Opinion and Judgment Entry overruling the assignment of error asserted by petitioner in his appellate brief.  (*See id.*, Ex. 21).  Specifically, the court determined that "the trial court did not abuse its discretion by overruling appellant's motion to withdraw his guilty plea without first conducting an evidentiary hearing."  (*Id.*, p. 13).  In so ruling, the court agreed with the trial court's finding that petitioner's counsel had not performed deficiently in communicating concerns about Ryan Goodman's incriminatory statement without revealing the substance of that statement to petitioner.  The court explained:

> [A]ppellant's trial attorneys' *opinion* regarding the potential impact this evidence could have on the jury is nothing more than an exercise of his counsels' reasonable professional judgment that does not rise to the level of deficient representation.  In fact, the record clearly indicates that appellant's trial attorneys, just like any other criminal defense team, were there to provide appellant with informed advice, to relate worse case scenarios to him, and to make recommendations on how to proceed. . . .

(*Id.,* p. 11).  The state appellate court also found "no error in the trial court's decision" rejecting petitioner's prosecutorial misconduct claim because the affidavits submitted in support of that claim "were, at best, rife with ambiguity and based on multiple layers of hearsay."  (*Id.*, p. 12).  The court went on to conclude that because petitioner had thus "failed to demonstrate a reasonable likelihood that withdrawal of his guilty plea was necessary to correct a manifest injustice, the trial court did not err by denying his motion without first conducting an evidentiary hearing."  (*Id.*).

On the other hand, in addressing the issue raised *sua sponte* by the court during oral arguments, the Ohio Court of Appeals concluded that because petitioner was ineligible for post-release control given his conviction and sentence for aggravated murder, the trial court had incorrectly informed petitioner at the plea hearing that "he was subject to a mandatory five-year term of postrelease control if he was ever released from prison." (*See id.*, pp. 2 n.1, 8). The court nevertheless held that petitioner's guilty plea was "valid" and affirmed his conviction for aggravated murder, reasoning in pertinent part as follows:

> After a thorough review of the record, we find the trial court strictly complied with the requirements of Crim.R. 11(C)(2)(c) in explaining appellant's *constitutional* rights to him. . . . However, because the trial court incorrectly informed appellant that he was subject to a mandatory five-year term of postrelease control . . ., thereby obscuring the relatively straightforward maximum penalty involved, the trial court did not substantially comply with Crim.R. 11 as it relates to appellant's *nonconstitutional* rights, but instead, merely partially complied with the rule. . . .
>
> Yet, besides merely asserting in his supplemental brief that he "would not have followed through with his plea" after this court brought the issue to his attention, there is simply nothing in the record to suggest appellant would not have entered his guilty plea had the trial court not erroneously informed him that he was subject to a mandatory five-year term of postrelease control. As the record indicates, appellant was informed on numerous occasions that his decision to enter a guilty plea to aggravated murder, an unclassified felony, carried with it the maximum penalty of life in prison without the possibility of parole. In turn, because there is simply nothing in the record to indicate appellant misunderstood the ramifications of his decision, and because he failed to prove the conditions he faced if he was ever released from prison were critical to his decision to enter his guilty plea, we find appellant has not demonstrated any resulting prejudice. . . . Accordingly, appellant's guilty plea is affirmed.

(*Id.*, pp. 8-9).

The Ohio Court of Appeals went on to point out that although petitioner's guilty plea was valid, the trial court had also "improperly imposed a mandatory five-year term of postrelease control as part of its sentence." (*Id.*, p. 9). The erroneous sentencing provision was found to be

8

"in addition to, and not in lieu of, the trial court's proper explanation of the possibility of parole following . . . 20 years of imprisonment." (*Id.*, pp. 9-10). Therefore, the Ohio Court of Appeals did not remand the matter for resentencing, but merely vacated the void post-release control portion of the sentencing entry. (*See id.*, p. 10 & "Judgment Entry").

Petitioner's counsel filed a timely appeal on petitioner's behalf to the Ohio Supreme Court. (*Id.*, Ex. 22). In the memorandum in support of jurisdiction submitted by counsel, petitioner challenged the Ohio Court of Appeals' rulings on (1) the post-release control issue that had been raised *sua sponte* by the state appellate court, and (2) the ineffective assistance of counsel and prosecutorial misconduct claims that formed the bases for petitioner's motion to withdraw his guilty plea. (*See id.*, Ex. 23). On December 15, 2010, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 25).

### Federal Habeas Corpus Petition

On December 13, 2011, the same attorney who represented petitioner in the state court proceedings on his motion for withdrawal of his guilty plea filed the instant federal habeas corpus petition on petitioner's behalf. (*See* Doc. 1). In the petition, petitioner alleges two grounds for relief:

> **Ground One:** Governmental misconduct necessitates the vacating of petitioner's plea and sentence.

> **Ground Two:** The petitioner did not receive constitutionally effective assistance of counsel.

(Doc. 1, pp. 6, 8).

Respondent has filed a motion to dismiss the petition on the ground that it is barred from

review by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d) that governs

petitioner's federal habeas petition.  (Doc. 5).  Petitioner has filed a brief opposing the motion to

dismiss.  (Doc. 9).  Respondent has filed a brief in reply to petitioner's response.  (Doc. 11).

## II.  RESPONDENT'S MOTION TO DISMISS (DOC.  5) SHOULD BE GRANTED BECAUSE THE PETITION IS TIME-BARRED

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody

pursuant to the judgment of a state court must file an application for a writ of habeas corpus

within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the

pendency of a properly filed application for state post-conviction relief or other collateral

review.

In this case, the Court must first determine which limitations provision contained in 28

U.S.C. § 2244(d)(1) applies to petitioner's claims for relief.  As an initial matter, neither

petitioner nor respondent has suggested that § 2244(d)(1)(B) or § 2244(d)(1)(C) applies here.

Indeed, it appears clear from the record that petitioner has not asserted a constitutional right that

has been newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review, nor has he alleged that he was prevented from filing the instant petition until a state-created impediment to filing was removed. Therefore, only § 2244(d)(1)(A) or § 2244(d)(1)(D) are arguably applicable to the case-at-hand.

In the motion to dismiss, respondent contends that the instant petition is untimely under either § 2244(d)(1)(A) or § 2244(d)(1)(D). (*See* Doc. 5). It is respondent's position that to the extent petitioner's claims are governed by the one-year statute of limitations set forth in § 2254(d)(1)(A), the statute was triggered when petitioner's conviction became final on October 19, 2006, by the expiration of the thirty-day period for filing an appeal as of right to the Ohio Court of Appeals from the trial court's September 19, 2006 judgment entry sentencing petitioner in accordance with his plea bargain to life in prison with eligibility for parole after twenty years. *See* Ohio R. App. P. 4(A). Under respondent's version of events, the statute would have commenced running on October 20, 2006, one day after the sentencing entry was filed, *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and would have expired one year later absent application of statutory and equitable tolling principles. (*See* Doc. 5, p. 8).

Respondent alternatively argues that if the later limitations period set forth in § 2244(d)(1)(D) is found to apply to the case-at-hand, the petition is still untimely because petitioner clearly knew the factual bases for his claims for relief by the time he signed his affidavit in support of his motion to withdraw his guilty plea. (*Se*e Doc. 5, p. 12). Although the notary's statement swearing to petitioner's signature on the affidavit is difficult to read, the statement is legible enough to discern, as respondent has argued, that petitioner executed his affidavit on either March 26 or May 26, 2009. (*See id.* & Ex. 9, "Exhibit 2"). Therefore,

according to respondent's calculations, the § 2244(d)(1)(D) statute of limitations began to run before May 26, 2009, and expired at the very latest by October 22, 2011, after taking into account the statutory tolling of the limitations period while petitioner's motion to withdraw his guilty plea was pending in the state courts.  (*See* Doc. 5, p. 12).

In his memorandum in opposition to respondent's motion to dismiss, petitioner contends that his petition is timely under § 2244(d)(1)(A) because the judgment of conviction and sentence was not finalized "until at the earliest December 15, 2010," when the Ohio Supreme Court denied petitioner leave to appeal from the Ohio Court of Appeals' August 2010 decision affirming the denial of his motion to withdraw his guilty plea, but with modification to his sentence.  (*See* Doc. 9, pp. 2-4).

Petitioner's argument lacks merit to the extent he contends that his unsuccessful motion to withdraw his guilty plea had any impact on the finality determination under 28 U.S.C. § 2244(d)(1)(A) or otherwise served to restart the running of the clock.  *See, e.g.*, *Gibson v. Warden, Hocking Corr. Facility*, No. 1:10cv8, 2011 WL 1429099, at *7 (S.D. Ohio Feb. 23, 2011) (Litkovitz, M.J.) (Report & Recommendation), *adopted*, 2011 WL 3861687 (S.D. Ohio Aug. 31, 2011) (Spiegel, J.); *Dickey v. Warden, Lebanon Corr. Inst.,* No. 1:08cv819, 2010 WL 92510, at *4 & n.2 (S.D. Ohio Jan. 6, 2010) (Beckwith, J.; Black, M.J.); *Goodballet v. Mack,* 266 F. Supp.2d 702, 707 (N.D. Ohio 2003) (citing *Thompson v. Chandler,* 36 F. App'x 783, 785 (6th Cir. 2002)); *see also Coffey v. Warden, Warren Corr. Inst.,* No. 1:06cv717, 2007 WL 951619, at *1, *3-5 (S.D. Ohio Mar. 28, 2007) (Dlott, J.; Black, M.J.) (holding that the filing of a post-sentence motion to withdraw a guilty plea only serves to toll "the limitations period and does not reset it," and that the "fact that the Ohio courts considered [the] motion . . . on the

merits does not change the . . . determination that the federal statute of limitations commenced running when petitioner's conviction became 'final'" six years earlier).

Citing *Burton v. Stewart,* 549 U.S. 147 (2007) (per curiam), *Rashad v. Lafler,* 675 F.3d 564 (6th Cir. 2012), and other supporting cases, petitioner also contends that because the Ohio Court of Appeals vacated a portion of the September 2006 sentencing entry in its August 2010 decision, he effectively received a new sentence that restarted the running of the statute-of-limitations clock. (*See* Doc. 9, pp. 3-4). In other words, it is petitioner's position that the instant petition is timely because his conviction was not rendered final under § 2244(d)(1)(A) until the conclusion of direct review or expiration of time for seeking review of the August 2010 modified sentence. (*Id.*).

In *Burton*, the petitioner was convicted and sentenced in 1994, resentenced in 1996, and resentenced a second time in 1998. *See Burton,* 549 U.S. at 149–51. In 1998, after the final resentencing judgment was entered, but while his appeal from that entry was pending in the state courts, the petitioner filed a § 2254 petition requesting review of the 1994 judgment of conviction, wherein he raised claims challenging the underlying convictions only and not his sentence. *Id.* at 151. The district court denied relief, and the circuit court affirmed. *Id.* In 2002, after exhausting his state court appeal from the 1998 resentencing decision, petitioner filed another federal habeas petition contesting the 1998 judgment, wherein he challenged only the constitutionality of his sentence. *Id.* at 151–52. Although the district and circuit courts reviewed the petition on the merits, the Supreme Court held that it constituted a "second or successive" under 28 U.S.C. § 2244(b), which the district court lacked jurisdiction to consider absent authorization from the circuit court pursuant to gate-keeping provisions set forth in § 2244(b)(3).

*Id.* at 152. In so holding, the Court rejected the petitioner's argument that his 1998 and 2002 petitions challenged different judgments. *Id.* at 155–56. The Court reasoned that the 1998 judgment was the judgment pursuant to which petitioner was being detained both when he filed his first petition in 1998 and his second petition in 2002, and that "there was no new judgment intervening between the two habeas petitions." *Id.* at 156.

Of particular relevance to the instant case, the Court specifically addressed when a judgment becomes final for statute of limitations purposes in rejecting another argument asserted by petitioner to the effect that "had he not filed the 1998 petition when he did, and instead waited until state review of his sentencing claims was complete, he risked losing the opportunity to challenge his conviction in federal court due to [the] 1-year statute of limitations" set forth in 28 U.S.C. § 2244(d)(1). *Id.* The Court stated:

> [T]his argument misreads [the statute], which states that the limitations period applicable "to a person in custody pursuant to the judgment of a State court" shall run from, as relevant here, "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review." § 2244(d)(1)(A). "Final judgment in a criminal case means sentence. The sentence is the judgment." . . . Accordingly, Burton's limitations period did not begin until both his conviction *and* sentence "became final by the conclusion of direct review or the expiration of the time for seeking such review"–which occurred well *after* Burton filed his 1998 petition.

*Id.* at 156–57 (quoting *Berman v. United States,* 302 U.S. 211, 212 (1937)) (emphasis in original).

In *Rashad*, the petitioner was convicted in 1989 of a drug-trafficking offense in the State of Michigan, which at the time carried a mandatory sentence of life in prison without the possibility of parole. *See Rashad*, 675 F.3d at 566. Holding that the sentence violated the state constitution's ban on cruel and unusual punishment, the trial court instead sentenced petitioner to

a prison term of 40 to 100 years. *Id.* On petitioner's appeal and the State's cross-appeal, the state appellate court affirmed the petitioner's conviction, but reversed his sentence on the ground that the mandatory life sentence did not amount to cruel and unusual punishment under the state constitution. *Id.* The petitioner was resentenced over ten years later in May 2004 to a life term of imprisonment with the possibility of parole in light of a 1992 state supreme court decision holding that the "without-parole component of this kind of life sentence violated the state constitution's ban on cruel and unusual punishment." *See id.* at 567.

In 2008, after exhausting his state court appeal from the 2004 resentencing decision, the petitioner filed his first federal habeas petition raising claims challenging both his 1989 conviction and 2004 sentence. *See id.* The district court denied the petition, and an appeal ensued wherein the State raised the argument that petitioner's claims challenging his 1989 conviction were not subject to review on the merits because they were time-barred. *See id.* The Sixth Circuit rejected the State's contention and held that the petitioner had "timely filed all of his claims, including those challenging the underlying conviction." *Id.* at 568. In so ruling, the court reasoned in relevant part:

> One premise of the State's argument is straightforward: A judgment in a criminal case typically becomes final after direct review by the state courts and the United States Supreme Court or at the end of the time for seeking such review. *See Jimenez v. Quarterman,* 555 U.S. 113, 119–20, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009).

> Another premise is not. Although the Michigan appellate courts affirmed Rashad's *conviction* in 1993, they threw out his *sentence* and remanded the case for resentencing. When does a petitioner's "judgment bec[o]me final," § 2244(d)(1)(A), in this setting? After direct review of the conviction? Or after direct review of the new sentence imposed at resentencing?

> *Burton . . .,* it seems to us, shows that the judgment becomes final after direct review of the new sentence. . . .

15

Burton's situation parallels Rashad's in all material ways. Burton's 1998 petition raised claims challenging his conviction from several years before, but the statute of limitations had not yet started to run because direct review of the new sentence he received on resentencing was not yet complete. So too here. Rashad filed his petition within the limitations period after direct review of his *new* sentence ended. Rashad timely filed all of his claims, including those challenging the underlying conviction.

A contrary approach would require Rashad to bifurcate the claims arising from his criminal case into distinct judgments–one related to the conviction, one related to the sentence. Yet the AEDPA statute of limitations speaks of one "judgment," § 2244(d)(1)(A), not many. And *Burton* tells us the "judgment in a criminal case means sentence." 549 U.S. at 156. . . . Besides splitting each criminal judgment into two, the State's approach would require petitioners to comply with different limitations clocks for each judgment and, it is worth adding, would require the State to defend two cases rather than one. That approach would not advance "AEDPA's goal of streamlining federal habeas proceedings," *Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), as it would force prisoners who have their convictions affirmed but their sentences vacated–a "not uncommon situation," *Burton,* 549 U.S. at 154, . . .–to file dual petitions. A fair reading of the language of AEDPA together with *Burton* does not support this approach, and neither do the decisions of any other circuits. To our knowledge, all of the circuits to address this question after *Burton* agree that the limitations clock in this setting begins after the new sentence. *See Scott v. Hubert,* 635 F.3d 659, 666 (5th Cir. 2011)[, *cert. denied,* 132 S.Ct. 763 (2011)]; *Villaneda v. Tilton,* 432 Fed.Appx. 695, 695 (9th Cir. 2011) (government conceded judgment did not become final until after resentencing); *Ferreira v. Sec'y, Dep't of Corr.,* 494 F.3d 1286, 1292–93 (11th Cir. 2007); *cf. United States v. Carbajal–Moreno,* 332 Fed.Appx. 472, 474–76 (10th Cir. 2009) (reaching same result based on similar language in 28 U.S.C. § 2255(f)(1)).

*Id.* at 567-68 (emphasis in original).

The circuit court continued its analysis by distinguishing a prior published panel decision in *Bachman v. Bagley*, 487 F.3d 979 (6th Cir. 2007), which involved the question whether the statute of limitations began anew based on a sexual predator determination made by the trial court years after the petitioner's underlying conviction and sentence had been affirmed on direct appeal. *See Rashad*, 675 F.3d at 569. Specifically, in *Bachman*, the Sixth Circuit held that the petitioner's "designation as a sexual predator started the running of a ne[w] statute of limitations

period with respect to challenges to the sexual predator designation *only*–not with respect to challenges to his underlying conviction." *Bachman*, 487 F.3d at 983 (footnote omitted). The *Rashad* court distinguished *Bachman* as follows:

> *Bachman* differs from today's case because the state appellate courts affirmed Bachman's conviction *and his sentence* on the first round of direct review. His judgment thus became final upon the conclusion of that first round of direct review, *Burton,* 549 U.S. at 156–57, . . . and he could not use his subsequent designation as a sexual predator to reopen his final conviction. Here, by contrast, Rashad's judgment did not become final after his first round of direct review because he no longer was subject to a sentence. The judgment became final upon the conclusion of direct review of the new sentence he received at resentencing. *See id.* at 156–57. . . .

*Rashad*, 675 F.3d at 569.

This case falls somewhere between *Rashad* and *Bachman*. Unlike *Bachman*, petitioner's conviction and sentence were not affirmed in a "first round of direct review." Moreover, the Ohio Court of Appeals' only decision in August 2010, affirming the denial of petitioner's motion to withdraw his guilty plea, resulted in a modification of petitioner's sentence. On the other hand, unlike *Rashad*, petitioner does not raise any claims in the instant habeas action based on the modification of his sentence to exclude a mandatory five-year term of post-release control upon his release from prison. The issue giving rise to the modification was raised *sua sponte* by the state appellate court, not by petitioner in challenging the validity of his guilty plea either in the state courts or the instant action. Furthermore, the modification did not pertain to petitioner's underlying conviction for aggravated murder or the sentence of life imprisonment with the possibility of parole after 20 years, which formed the basis of the parties' plea bargain. Finally, without requiring a resentencing hearing or the filing of a new sentencing entry as in *Rashad*, the Ohio Court of Appeals merely vacated the void portion of the sentencing entry after determining

that (1) post-release control was not part of the parties' plea bargain or a factor that influenced petitioner's decision to enter a guilty plea, and (2) the void term did not replace, but rather was imposed "in addition to," the "proper explanation" contained in the sentencing entry of "the possibility of parole" after serving 20 years of his life prison term. (*See* Doc. 5, Ex. 21, pp. 8-10). Therefore, the question posed here is whether that one uncontested modification to petitioner's sentence, which did not impact petitioner's underlying conviction for aggravated murder or the agreed-to term of imprisonment imposed for that offense, amounts to a "new" sentence that re-triggered the running of the § 2244(d)(1)(A) statute of limitations.

Courts confronted with the question whether a modification to a sentence, as opposed to a resentencing, restarts the §2244(d)(1)(A) limitations period have rejected the argument that *any* modification to a sentence results in a "new" judgment for statute of limitations purposes. *See, e.g., Murphy v. United States,* 634 F.3d 1303, 1311-12 (11th Cir. 2011); *see also Speller v. Johnson,* No. 3:09cv463, 2012 WL 1038624, at *9 n.21 (E.D. Va. Mar. 27, 2012) (and cases cited therein) (noting that "courts have rejected the notion that alterations to a defendant's sentence, short of a resentencing, alter the date at which finality attaches for purposes of the AEDPA's statute of limitations"); *Kilgore v. Superindentent, Miami Corr. Facility,* No. 3:09-CV-419-TLS, 2012 WL 868613, at *2 (N.D. Ind. Mar. 13, 2012) ("It is well-established that resentencing–as opposed to sentence modification–restarts the AEDPA statute of limitations."). Instead, courts examine the surrounding circumstances to determine whether a sentence modification should be considered "equivalent" to a resentencing that restarts the running of the clock in a particular case. *Cf. Kilgore, supra,* 2012 WL 868613, at *2-3 (holding that the sentence modification in that case "was the equivalent of the resentencings found . . . to restart

the AEDPA clock" because the alleged error giving rise to the sentence modification existed at the time the petitioner was originally sentenced and because the habeas petition challenged only the sentence modification, and it therefore "ma[de] no sense to construe the statute of limitations for th[at] claim as commencing on the date of his original sentencing rather than the date of the sentence he is actually challenging–the sentence modification").

Although the undersigned could find no case exactly on point to the instant case, courts have held that a trial court's *nunc pro tunc* judgment entry to correct a technical or clerical error in the original sentence does not constitute a new judgment of sentence that restarts the running of the § 2244(d)(1)(A) statute of limitations. *See, e.g., Davis v. Coleman*, No. 5:11cv996, 2012 WL 967300, at *4-7 (N.D. Ohio Mar. 6, 2012) (Report & Recommendation) (holding that a *nunc pro tunc* entry issued after a resentencing hearing to inform the petitioner, who had been convicted and sentenced three years earlier upon entry of a guilty plea, that he was subject to a five-year mandatory term of post-release control, as opposed to a mandatory term "for up to a maximum period of five years" as set forth in the original sentencing entry, "did not substantially alter the original judgment entry" and, therefore, did not affect the finality of that judgment for federal habeas statute of limitations purposes), *adopted*, 2012 WL 967102 (N.D. Ohio Mar. 21, 2012); *Speller, supra*, 2012 WL 1038624, at *9 n.21 ("courts have uniformly held that when a court corrects a clerical error in a criminal judgment, the AEDPA's one-year limitations period does not begin anew when the court corrects the clerical error") (internal citation and quotation marks omitted). *Cf. In re Martin*, 398 F. App'x 326, 327 (10th Cir. 2010) (holding that an "amended judgment merely correct[ing] a clerical error–one which did not rise to the level of constitutional error," did *not* constitute an intervening judgment that rendered a subsequent

19

federal habeas petition non-successive within the meaning of 28 U.S.C. § 2244(b)); *see also In re Lampton,* 667 F.3d 585, 587-89 (5th Cir. 2012); *Hawkins v. United States,* No. 89-CR-80335, 2011 WL 2533658, at *1-2 (E.D. Mich. June 27, 2011).

In another unpublished case, a district court in Oklahoma held that neither the limitations period was restarted nor a new limitations period triggered by a modification to the petitioner's sentence, wherein "the suspended portion" of a 30-year sentence "with the last ten years suspended" was vacated because of the petitioner's ineligibility to receive a suspended sentence. *Miller v. Mullin,* No. CIV-11-172-C, 2011 WL 2927235, at *2 & n.2 (W.D. Okla. June 27, 2011) (Report & Recommendation), *adopted*, 2011 WL 2923980 (W.D. Okla. July 19, 2011). Moreover, courts have held that modifications of sentences affording sentence credits to prisoners or otherwise reducing their sentences do not alter the date at which finality attaches for statute of limitations purposes. *See, e.g., Graham v. Smelser*, 422 F. App'x 705, 707-08 (10th Cir. 2011) (and cases cited therein); *Speller, supra,* 2012 WL 1038624, at *4 & n.13, 9 n.21 (involving modification to a sentence in May 2009 to accord credit for time served on another sentence and a subsequent modification in June 2009 to correct an error in calculating the credit amount). *Cf. Murphy*, 634 F.3d at 1312-13 (and cases cited therein) (involving modification pursuant to the government's Fed. R. Crim. P. 35(b) post-sentence motion for reduction of a federal criminal defendant's sentence based on his "substantial assistance" in the investigation or prosecution of another person).

Finally, it appears that neither the Supreme Court nor the Sixth Circuit and lower courts within the Sixth Circuit have extended the holdings in *Burton* and *Rashad* to a case such as this where no claims have been raised that either stem from or otherwise challenge the later

modification to the petitioner's sentence.[1]  In *Bachman*, the Sixth Circuit noted that "the rule that the date of 'judgment' under § 2244(d)(1)(A) is the date of a subsequent sentencing proceeding applies only to habeas petitions challenging the resentencing decision itself."  *Bachman*, 487 F.3d at 983 n.3.  *Bachman* was undermined by *Burton* and *Rashad* to the extent that the *Bachman* court refused to follow precedents holding that resentencing starts the statute of limitations for *all* claims, including those arising from the original conviction.  *See Johnson v. Warden, Lebanon Corr. Inst.,* No. 1:09cv336, 2010 WL 2889056, at *5-7 (S.D. Ohio June 23, 2010) (Wehrman, M.J.) (Report & Recommendation), *adopted*, 2010 WL 2889057 (S.D. Ohio July 20, 2010) (Beckwith, J.).  However, neither *Burton* nor *Rashad* addressed the opposite scenario suggested by *Bachman* involving habeas petitions which do not contain any claims challenging the resentencing decision.  In contrast, the Tenth Circuit has expressly held that in order for a resentencing decision to be deemed "sufficient to restart the limitations period," the petitioner must "bring at least *some* claim challenging the *resentencing*, as opposed to the original conviction."  *Vallez v. Hartley,* 305 F. App'x 505, 508 (10th Cir. 2008) (emphasis in original).  Lower courts have followed *Vallez*, as well as *Bachman*, in similarly concluding that when a habeas petitioner does not challenge his resentencing, the judgment of conviction becomes final under § 2244(d)(1)(A) at the time the original sentence was entered, not when he was resentenced.  *See, e.g., Moore v. Minnesota,* Civ. Act. No. 10-3843 (JRT/FLN), 2010 WL 6634573, at *3 (D. Minn. Oct. 20, 2010) (Report & Recommendation), *adopted*, 2011 WL

---

[1]One of the cases cited by petitioner in support of his position–*Johnson v. Brunsman,* No. 2:09cv369, 2010 WL 1856301, at *2 (S.D. Ohio May 10, 2010) (Kemp, M.J.) (Report & Recommendation), *adopted*, 2010 WL 2301287 (S.D. Ohio June 7, 2010) (Watson, J.)–appears to have involved a petition only raising claims challenging the underlying conviction.  However, in that case, the court did not consider the question at hand, but instead determined that the petition was time-barred even if the statute of limitations did not begin to run until the resentencing decision became final.  *See id.* at *2-3.

1827472 (D. Minn. May 12, 2011); *see also Haynes v. Barr*, No. 11-cv-03121-BNB, 2012 WL 366572, at *4 (D. Colo. Feb. 2, 2012).

The undersigned is persuaded upon review of the albeit limited case-law that has developed in the wake of *Burton* that, at least under the circumstances presented in this case, the modification to petitioner's sentence in August 2010 did not affect the finality of the judgment of conviction and sentence challenged by petitioner in the instant action, which was entered on September 19, 2006 when he was convicted and sentenced upon entry of his guilty plea. As the Ohio Court of Appeals reasonably concluded, it is clear from the record that post-release control was not a part of the parties' plea bargain or a factor in petitioner's decision to enter a guilty plea, which instead was focused on obtaining the minimum sentence for aggravated murder of life in prison with the possibility of parole after 20 years. (*See* Doc. 5, Exs. 5, 29). Moreover, petitioner was correctly advised at the plea hearing about the sentence he faced and properly sentenced in accordance with the parties' plea agreement to the bargained-for sentence. (*See id.*, Exs. 6, 29). Therefore, the trial judges' error in including a mandatory post-release control term as part of the sentence did not have any impact on the validity of petitioner's guilty plea, nor did the later modification to his sentence to correct the error substantially alter the original judgment entry. *Cf. Davis, supra*, 2012 WL 967300, at *4-7. Perhaps most importantly, petitioner does not assert any claims in his habeas petition challenging either his guilty plea based on the trial court's error regarding post-release control or the Ohio Court of Appeals' modification to his sentence to correct that error. Instead, petitioner only challenges the validity of his guilty plea based on the ineffective assistance of counsel and prosecutorial misconduct claims that he first raised to the trial court in his motion to withdraw his guilty plea. Those claims, which arose

*before* the Ohio Court of Appeals *sua sponte* added the post-release control matter as an issue to be considered on appeal, pertained to the original judgment of conviction entered in 2006.

Accordingly, the Court concludes that contrary to petitioner's contention, if the statute of limitations set forth in § 2244(d)(1)(A) applies to petitioner's claims for relief, the statute began to run, as respondent has argued, on October 20, 2006, a day after the September 19, 2006 sentencing entry became "final" by the expiration of the 30-day period for filing a timely appeal as of right to the Ohio Court of Appeals. The limitations period expired one year later on October 20, 2007 absent application of statutory or equitable tolling principles. Therefore, the latest limitations provision that is arguably applicable in this case is the one-year statute of limitations set forth in § 2244(d)(1)(D), which was triggered when the facts underlying petitioner's claims for relief could have been discovered through the exercise of due diligence.

Here, as respondent has argued, the factual predicate of petitioner's claims for relief was discoverable in the exercise of due diligence *before* petitioner executed his affidavit in support of his motion to withdraw his guilty plea on March or May 26, 2009. (*See* Doc. 5, Ex. 9, "Exhibit 2"). Therefore, the § 2244(d)(1)(D) limitations period began at the very latest by May 26, 2009, and expired a year later absent application of statutory or equitable tolling principles.

During the one-year limitations period, petitioner was entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* __ U.S. __, 130 S.Ct. 2549, 2554 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). "The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause

a clock that has not yet fully run." *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).  Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar.  *Id.*

The undersigned assumes, without deciding, in petitioner's favor that the petition is governed by § 2244(d)(1)(D), which began to run on May 26, 2009.  The statute was tolled 55 days later on July 20, 2009, when petitioner filed his motion to withdraw his guilty plea with the trial court.  (*See* Doc. 5, Ex. 9).  The statute recommenced running on December 16, 2010, one day after the Ohio Supreme Court issued its decision summarily dismissing petitioner's appeal from the denial of his motion to withdraw his guilty plea (*see id.*, Ex. 25), and expired 310 days later on October 22, 2011.  *Cf. Lawrence v. Florida,* 549 U.S. 327, 332-36 (2007) (holding that the statutory tolling provision set forth in § 2244(d)(2) does not apply after a post-conviction matter is no longer "pending" in the state courts to further toll the limitations period during the time a petition for certiorari is pending before, or could have been filed with, the United States Supreme Court).

Accordingly, in sum, the undersigned concludes that because the most favorable limitations period expired by October 22, 2011, the instant petition filed by counsel on December 13, 2011, is time-barred unless petitioner is entitled to equitable tolling.  The AEDPA's statute of limitations is subject to equitable tolling, *see Holland*, 130 S.Ct. at 2560, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control."  *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)), *petition for cert. filed,* Nos. 11-10643, 11A869 (U.S. Apr. 25, 2012).  Equitable tolling is granted

"sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 130 S.Ct. at 2562 (internal quotations omitted)); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir.), *cert. denied,* 132 S.Ct. 456 (2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

Petitioner has not demonstrated that he is entitled to equitable tolling in this case. First, petitioner has not shown that he has been diligent in pursuing his rights. Petitioner hired a private investigator, who investigated the case for a year and a half from May 2007 to December 2008. Petitioner has also had the assistance of counsel throughout the state court proceedings, as well as the instant action. Despite the assistance that he has received to date, petitioner nevertheless delayed in filing his motion to withdraw his guilty plea until nearly three years after he was convicted and sentenced in September 2006 and over seven months after the private investigator completed his investigation. Moreover, petitioner waited nearly a year after the Ohio Supreme Court issued its final ruling in the proceedings on his motion to withdraw his guilty plea before filing the instant federal habeas action. Petitioner's delays in pursuing relief in the state courts and in initiating this federal habeas action demonstrate that he has not acted with

the degree of diligence necessary to trigger equitable tolling concerns.

Second, petitioner has not shown that he was prevented by some extraordinary circumstance from seeking relief in a more timely manner. Petitioner argues in his memorandum in opposition to respondent's motion to dismiss that he is entitled to equitable tolling because he was prevented from filing the petition earlier by the trial court's failure to modify the sentencing entry in accordance with the Ohio Court of Appeals' August 2, 2010 decision vacating the portion of the sentence imposing a mandatory five-year term of post-release control. (Doc. 9, pp. 10-11). However, as respondent has pointed out (*see* Doc. 11, p. 3), the Ohio Court of Appeals' ruling was sufficient to correct the defect in the petitioner's sentence without any further action by the trial court. *See State v. Fischer*, 942 N.E.2d 332, 341 (Ohio 2010) (and numerous cases cited therein) (in a case where the trial court failed to impose post-release control in accordance with statutorily mandated terms, the state supreme court held that "[c]orrecting the defect . . . without remanding for resentencing" was a proper remedy for the void judgment on a matter in which the original sentencing court had no sentencing discretion). In any event, petitioner is not challenging the modification to his sentence in this action. Therefore, even assuming that the trial court was required to enter a modified sentencing order on the trial docket, petitioner was not prevented from filing the instant action despite the lack of such an entry, nor has he adequately explained why the failure to enter such an order prevented him from filing a timely habeas petition.

Furthermore, to the extent that petitioner's attorney appears to have miscalculated the statute of limitations period in this case, equitable tolling is not warranted in the absence of any evidence in record that the error amounted to anything more than "a garden variety claim" of

"excuseable neglect" or negligence.  *Cf. Holland*, 130 S.Ct. at 2564 (holding that only "serious instances of attorney misconduct" may rise to the level of an "extraordinary circumstance" for equitable tolling purposes); *see also Lawrence,* 549 U.S. at 336-37 ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."); *Patterson,* 455 F. App'x at 609-11 (holding that attorney's neglect or error did not warrant equitable tolling in the absence of a showing by petitioner of his own diligence).

Finally, a credible claim of actual innocence can provide a basis for equitable tolling of the limitations period.  *See Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005).  The procedural bar to review may be excused if the "habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt."  *Id.*; *see also McSwain v. Davis,* 287 F. App'x 450, 458 (6th Cir. 2008) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  The standard is "demanding and permits review only in the 'extraordinary' case."  *House v. Bell,* 547 U.S. 518, 538 (2006) (quoting *Schlup,* 513 U.S. at 327).  "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson,* 523 U.S. 538, 559 (1998) (quoting *Schlup,* 513 U.S. at 324); *see also Perkins v. McQuiggin*, 670 F.3d 665, 671 (6th Cir. 2012) ("claims of actual innocence must be based on new reliable evidence") (internal citation and quotation omitted), *petition for cert. filed* (U.S. July 25, 2012) (No. 12-126).

According to the "agreed statement of facts" entered on the record at the plea hearing, the "evidence of trial would have shown" that petitioner placed shovels and rakes into his vehicle on the night before the murder; that he drove Jason Evick and the victim in his vehicle to a secluded

location, after luring the victim there "under false pretenses;" and that he then proceeded to "assault[]" the victim, who died "of blunt force trauma caused by the shovel [petitioner] had brought to the scene." (Doc. 5, Ex. 29, Tr. 24-25). The only arguably "new" evidence that petitioner has presented since the plea hearing are his own affidavit and the affidavits of Ryan Goodman and Orrin Nordstrom, which he submitted in support of his motion to withdraw his guilty plea. (*See id.*, Ex. 9, "Exhibits 1-3").

Neither petitioner's own self-serving affidavit nor Goodman's affidavit constitute evidence of petitioner's innocence. Indeed, in his affidavit, petitioner did not assert his innocence, but rather only claimed that he would not have entered a guilty plea if he had known of the content of Goodman's statement or of Evick's purported admission of guilt to Amanda Fugate. (*Id.*, "Exhibit 2"). Moreover, Goodman's affidavit, containing an incriminating statement by petitioner to Goodman about the murder, constituted additional evidence of petitioner's guilt, not his innocence. (*See id.*, "Exhibit 1").

Nordstrom's affidavit also falls short of establishing a credible claim of actual innocence. After a lengthy investigation spanning a period of over a year and a half, Nordstrom only generally averred that he discovered (1) Amanda Fugate had stated in an interview that she had told the police that Evick admitted to her that he killed the victim; and (2) another potential suspect, Jeff Weldon, had an "antagonistic relationship" with the victim due to their mutual involvement in "illegal drug trafficking." Nordstrom's vague statement about Weldon's relationship with the victim does not amount to probative evidence of petitioner's innocence, but rather only speculatively suggests that Weldon did not get along with the victim and thus may have possibly had a motive for doing him harm. Furthermore, Nordstrom's ambiguous statement

about a statement purportedly made by Amanda Fugate in an "interview" regarding an alleged admission of guilt made to her by Evick, constitutes the strongest evidence of petitioner's innocence, but as the Ohio courts reasonably determined, the hearsay-within-hearsay evidence lacks reliability and is too vague to establish a credible or persuasive claim of actual innocence in light of petitioner's own admission of guilt entered on the record at the plea hearing. *Cf. Knickerbocker v. Wolfenbarger,* 212 F. App'x 426, 433 (6th Cir. 2007) (pointing out that hearsay testimony, which appeared to exonerate the petitioner of guilt, was "presumptively less reliable than direct testimony"); *Courtney v. Scutt,* No. 1:09cv10842, 2011 WL 6217430, at *5 (E.D. Mich. Dec. 14, 2011) (citing *Herrera v. Collins*, 506 U.S. 390, 417 (1993), in support of determination that "hearsay statements . . . are . . . not reliable evidence to support a claim of actual innocence"). Even assuming, as suggested, that Evick assaulted the victim at the secluded location where they were driven by petitioner, Evick's admission does not mean that petitioner was a mere by-stander and did not also participate in the assault with the requisite intent of prior calculation and design to cause the victim's death. Therefore, petitioner has not established a credible claim of actual innocence that would entitle him to equitable tolling of the limitations period in this case.

Accordingly, in sum, the undersigned concludes that the instant petition filed on December 13, 2011, is time-barred. If 28 U.S.C. § 2244(d)(1)(A) applies to the case-at-hand, the statute began to run in October 2006 and expired a year later in October 2007 in the absence of any statutory or equitable tolling of the limitations period. Contrary to petitioner's contention, the modification of his sentence by the Ohio Court of Appeals in August 2010, vacating the portion of the September 19, 2006 sentencing entry imposing a post-release control term, did not

qualify to restart the § 2244(d)(1)(A) limitations period. In addition, under 28 U.S.C. § 2244(d)(1)(D), which provides for a later limitations period, the petition is still time-barred because, at the very latest, that statute began to run by May 26, 2009, and expired by October 22, 2011, after taking into account the statutory tolling of the limitations period while petitioner's motion to withdraw his guilty plea was pending in the state courts. Petitioner has not demonstrated that he is entitled to equitable tolling to further extend the limitations period in this case. Therefore, respondent's motion to dismiss (Doc. 5) should be **GRANTED**, and the instant habeas corpus petition (Doc. 1), filed after the statute of limitations had run its course, should be **DISMISSED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 5) be **GRANTED**, and that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DISMISSED** with prejudice on the ground that it is time-barred under 28 U.S.C. § 2244(d).

2. A certificate of appealability should issue with respect to the procedural statute of limitations issue addressed herein, because under the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reason" would find it debatable whether the Court is correct in its procedural ruling granting the respondent's motion to dismiss and whether petitioner has stated a viable constitutional claim in his time-barred grounds for relief.

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **GRANT**

petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R.

App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  <u>August 1, 2012</u>                    <u>s/ J. Gregory Wehrman            </u>
         <sub>cbc</sub>                    J. Gregory Wehrman
                                      United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JEFFREY E. EBERLE,             Case No. 1:11-cv-867
      Petitioner,

                                 Barrett, J.
     vs                         Wehrman, M.J.

WARDEN, MANSFIELD CORRECTIONAL
INSTITUTION,
      Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).